

FILED & ENTERED

FEB 03 2023

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bryant    DEPUTY CLERK**

## NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BEACON ORGANICS, LLC,<br><br><br><br><br><br>Debtor(s). | Case No.: 2:22-bk-11295-WB<br><br>CHAPTER 7<br><br>**MEMORANDUM OF DECISION ON**<br>**MOTION TO DISMISS**<br><br>Date:        October 6, 2022<br>Time:       2:00 PM<br>Courtroom: 1375 |

   On October 6, 2022, the Court held a hearing on a motion to dismiss ("Motion") filed by Jayme Bella ("Movant"). Movant seeks to dismiss the debtor, Beacon Organics, LLC's ("Beacon"), chapter 7[1] bankruptcy case, arguing that dismissal is required because (1) Beacon lacked authority to file under Pennsylvania law, and (2) Beacon failed to properly file all case commencement documents. Peter J. Mastan, the chapter 7 trustee ("Trustee"), opposes the motion on the grounds that no demonstrable "cause" to dismiss under 11 U.S.C. § 707 has

---

[1] Unless otherwise indicated, references to "Chapter," "Section/S" or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "FRBP" or "Rule" are to the Federal Rules of Bankruptcy Procedure, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P."); references to "LBR" are to the Local Bankruptcy Rules.

-1-

been presented and dismissal will result in "legal prejudice" to the estate and its
creditors.

The Court heard oral argument and took the matter under submission. Based
on the pleadings, record, and oral argument of the parties, and for the reasons that
follow, the Court will deny the Motion.

## I.      FACTUAL BACKGROUND

A. General Factual History

Beacon is a Pennsylvania company headquartered in Los Angeles,
California. Beacon owns two subsidiaries: Greenerways, LLC ("Greenerways")
and Choice Essential Oils, LLC ("Choice"). Greenerways was organized under
Pennsylvania law while Choice was organized under Nevada law. Greenerways
and Choice were in the business of manufacturing sanitizers, insect repellants,
essential oils, organic shampoos and conditioner and cleaning solutions. Beacon
does not conduct any independent business. Beacon, Greenerways and Choice
(collectively, the "Debtors") were founded by Movant, their former CEO.

On May 23, 2018, Debtors' entered into a one-year credit facility with the
lender P2Binvestor Incorporated ("P2Binvestor") in the initial amount of $5.5
million ("2018 Credit Facility") pursuant to a Financing and Security Agreement
("FSA"). The agreement was subject to an automatic yearly renewal. The 2018
Credit Facility provided Debtors with a revolving line of credit for funding
operations and working capital needs. In exchange, Debtors granted P2Binvestor a
blanket lien.

On November 13, 2019, P2Binvestor assigned its security interest to
P2BiHoldings LLC ("P2BiHoldings").  On August 4, 2020, P2BiHoldings and
Debtors amended the FSA (the "Amended FSA") to increase the revolving credit
limit to $7.2 million. Movant and Sharon Neiburg ("Neiburg") executed guaranties
(the "Guaranties") guarantying P2BiHoldings repayment of the Amended FSA.

On January 25, 2021, P2BiHoldings issued a Notice of Events of Default under the Amended FSA. On February 4, 2021, the parties entered into a forbearance agreement (the "Forbearance Agreement") and a series of amendments thereafter. Movant and Neiburg also each executed a pledge agreement (the "Pledge Agreement"), whereby they secured their obligations under the Guaranties by pledging their respective membership interests in Beacon ("Beacon Member Interests").

P2BiHoldings sold the loan and assigned its rights under the Amended FSA to Aion Acquisition LLC ("Aion") on May 31, 2021.[2] On September 28, 2021, after the fifth amendment to the Forbearance Agreement, Aion issued a Notice of Termination of Forbearance Period (the "Second Notice of Default").Subsequently, Aion foreclosed on Movant and Neiburg's Beacon Member Interests pursuant to the Pledge Agreements and Aion exercised its right to vote by proxy under the Pledge Agreements resulting in the removal of Movant and Andrew Levine as members of the board of managers. On December 3, 2021, Satish Palvai ("Palvai"), the president and CEO of Aion Financial Holdings, Inc. (an affiliate of Aion) and Andrew Hallowell ("Hallowell"), the CEO of Arcadia Funds, LLC, were installed as the new board members. After Aion's foreclosure of Movant and Neiburg's Beacon Member Interests, Movant no longer had any control over Debtors.

B.  Procedural History

On March 9, 2022, Debtors filed petitions for relief under chapter 7. The filings were authorized by a board resolution signed by Hallowell, Palvai and Charles Crookendon, the holder of all Preferred Units.

On May 31, 2022, Movant filed a motion to convert debtor Greenerways' bankruptcy case to one under chapter 11. Movant also sought, in the reply to the

---

[2] The Trustee asserts that the estate has potential claims against P2BiHoldings and/or Aion regarding the assignment of the debt and security interests to Aion.

1  Trustee's opposition, to have all of the Debtors' bankruptcy cases dismissed. The

2  Court denied the motion.

3        On September 8, 2022, Movant filed the Motion. Movant asserts two

4  grounds for dismissal of this chapter 7 case: (1) lack of authority to file the petition

5  under Pennsylvania law and (2) failure to timely file case commencement

6  documents. Movant also argues for the first time in her Reply that this case must

7  be dismissed on the basis that the Central District of California is an improper

8  venue.  Trustee filed its Opposition to the Motion and the senior secured creditor

9  Aion filed its Statement in Support of Maintaining Chapter 7 Case.  Several

10  creditors filed joinders to the Motion shortly before the hearing.

II.      JURISDICTION AND VENUE

12        This Court has jurisdiction to hear and determine the Motion pursuant to 28

13  U.S.C. §§ 157 and 1334. The chapter 7 bankruptcy case is a core proceeding. 28

14  U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§

15  1408 and 1409(a).

16        Movant contends in her Reply that the case must be dismissed based on a

17  forum selection clause in Beacon's Operating Agreement which requires that all

18  disputes arising out of the agreement must be litigated in the Pennsylvania federal

19  courts. See Motion, Exh. A (Operating Agreement § 12.13).

20        Because this argument was first raised in the Reply, it is waived. New

21  arguments cannot be made in the reply.[3] See e.g., Northwest Acceptance Corp. v.

22  Lynwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir. 1988); U.S. v. Birtle, 792

23  F.2d 846, 848 (9th Cir. 1986); Eberle v. Anaheim, 901 F.2d 814, 818 (9th Cir.

24  1990). Nonetheless, venue is proper in this Court under 28 U.S.C. § 1408. A

25  bankruptcy case may be commenced in the district in which the debtor is domiciled

26  or has resided, maintains a principal place of business, or maintains principal assets

27

28       [3] Movant also argues for the first time in the Reply that Trustee was derelict in his duties to the estate in failing to obtain Beacon's cooperation with Trustee's efforts to obtain information since the initial § 341 meeting of creditors. The Court will not consider this argument.

1  for the greatest portion of the 180 days prior to the filing of the petition. 28 U.S.C.

2  § 1408; Montana v. Blixseth (In re Blixseth), 484 B.R. 360, 365 (9th Cir. BAP

3  2012).  During the 180 days preceding the bankruptcy, all Debtors were

4  headquartered in Los Angeles and Greenerways' and Choice's manufacturing

5  facilities were located in Los Angeles. And pursuant to § 1408(2), which provides

6  venue for corporate affiliates if venue is proper for any of them, venue in this

7  District is also proper for any affiliate. 28 U.S.C. § 1408(2).

8          Furthermore, a forum selection clause in an agreement does not require

9  dismissal of a case filed in a different forum.  Indeed, a court may decline to

10 enforce a forum selection clause if, *inter alia,* " 'enforcement would contravene a

11 strong public policy of the forum in which suit is brought.' " Petersen v. Boeing

12 Co., 715 F.3d 276, 280 (9th Cir. 2013) (quoting Murphy v. Schneider Nat'l Inc.,

13 362 F.3d 1133, 1140 (9th Cir. 2004)). One of the Bankruptcy Code's primary

14 objectives is "centralization of disputes concerning a debtor's legal obligations." In

15 re Eber, 687 F.3d 1123, 1131 (9th Cir. 2012); see also In re Rader, 488 B.R. 406,

16 416 (9th Cir. BAP 2013). Thus, courts where a bankruptcy proceeding is pending

17 have declined to honor contractual selections of other forums where the matters at

18 issue constitute core proceedings and are not inextricably intertwined with non-

19 core proceedings. See, e.g., In re Iridium Operating LLC, 285 B.R. 822, 836–37

20 (S.D.N.Y.2002) (citing cases).  Here, the bankruptcy case is a core proceeding that

21 is not intertwined with non-core matters in federal court in Pennsylvania.  The

22 Court declines to enforce the forum selection clause in this case.

23                          III.    DISCUSSION

24         Section 707 controls the dismissal of a chapter 7 case and provides that the

25 bankruptcy court "may dismiss [the case] only after notice and a hearing and only

26 for cause." § 707(a) (italics added); In re Bartee, 317 B.R. 362, 365 (9th Cir. BAP

27

28

1  2004). Section 707(a) does not define cause but provides three enumerated

2  examples, none of which are applicable in this case.[4] 11 U.S.C. § 707(a).

3        The determination of "cause" under § 707(a) will typically depend on the

4  totality of the circumstances. See In re Sherman, 491 F.3d 948, 970 (9th Cir. 2007)

5  (setting forth the two-step analysis for determining "cause" under § 707(a); In re

6  Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008). The decision whether to grant a

7  motion to dismiss a chapter 7 case lies within the discretion of the bankruptcy

8  court. Eastman v. Eastman (In re Eastman), 188 B.R. 621, 624 (9th Cir. BAP

9  1995).

10        In this case, Movant failed to identify § 707(a) as the statutory foundation

11  for dismissal. Movant's two asserted grounds for dismissal of this petition—lack of

12  authority to file under Pennsylvania law and failure to file case commencement

13  documents—do not support dismissal of the case for cause.

14        A. Authority to File Petition

15        A voluntary bankruptcy case is commenced by the filing of a bankruptcy

16  petition by an entity that may be a debtor. 11 U.S.C. § 301. State law determines

17  who has the authority to file a voluntary bankruptcy petition on behalf of a debtor.

18  Price v. Gurney, 324 U.S. 100, 106–07 (1945); see also Keenihan v. Heritage

19  Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary

20  bankruptcy petition on a corporation's behalf must be authorized to do so, and the

21  authorization must derive from state law.").

22        Beacon is organized as a Pennsylvania limited liability company pursuant to

23  its Certificate of Organization, and its Operating Agreement states that

---

24  [4] Under § 707(a), a court may dismiss a bankruptcy liquidation petition filed under chapter 7 of

25  the Bankruptcy Code only after notice and a hearing and only for cause, including —
    (1) unreasonable delay by the debtor that is prejudicial to creditors;

26      (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
    (3) failure of the debtor in a voluntary case to file, within fifteen days…, the information

27         required by paragraph (1) of section 521, but only on a motion by the United States

28         trustee.
11 U.S.C. § 707(a).

1  Pennsylvania law controls. Thus, the Court looks to Pennsylvania law to determine

2  who has the authority to authorize a corporate bankruptcy case. See Price v.

3  Gurney, 324 U.S. at 104. Because limited liability companies are creatures of

4  statute, their members are subject to those duties that are authorized by statute. See

5  Hanaway v. Parkesburg Grp., L.P., 168 A.3d 146, 154-58 (Pa. 2017). The burden

6  of demonstrating cause for dismissal for lack of authority to file is on the Movant.

7  In re Oregon Homes, LLC, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio Sept. 25,

8  2014).

9       The Pennsylvania Limited Liability Company Act of 2016 governs limited

10 liability companies under Pennsylvania law. 15 Pa.C.S. §§ 8811-8898. The

11 Pennsylvania Act provides that the limited liability company may be operated

12 pursuant to an operating agreement, and the operating agreement shall govern

13 except with respect to certain provisions of the Act which may not be waived. 15

14 Pa.C.S. § 8816(a) (a "limited liability company is bound by and may enforce the

15 operating agreement…"); 15 Pa.C.S. § 8815(a)(1) (subject to enumerated

16 exceptions that are not applicable here, "the operating agreement governs…

17 relations among the members as members and between the members and the

18 limited liability company"). If the operating agreement is silent, the provisions of

19 the Act apply. See 15 Pa.C.S. § 8815(a) and (b).

20      Movant argues that Beacon's board did not have the requisite authority to

21 file the chapter 7 petition because the Operating Agreement is silent as to the

22 authority to file a bankruptcy petition and § 8847 of the Pennsylvania Act requires

23 that all shareholders consent to the taking of an action outside the ordinary course

24 of business of the company.  However, § 8847 would only apply if the Operating

25 Agreement does not control.[5]

26

27

---

28 [5] While some provisions of the Act may not be waived, § 8847 is not one of them. See 15 Pa.C.S. § 8815 (c).

1    A close analysis of the Operating Agreement leads to the conclusion that the

2    Board had the authority under that agreement to file the petition. First, the

3    Operating Agreement provides an extremely broad grant of authority to the Board.

4    Section 5.1 provides that the powers of the company are to be exclusively

5    exercised by the Board and the Board has the exclusive authority to operate the

6    business.

7    Further, the Operating Agreement expressly provides for the initiation of any

8    legal proceeding by Beacon and any action to liquidate the company. Specifically,

9    § 5.11(i) states, "the Board shall have the power and authority to the fullest extent

10    permitted by the Act, on behalf of the Company, among other things, to ….

11    institute, prosecute, defend and settle legal, administrative or other suits, claims or

12    proceedings against or by the Company or in the Company's name and engage

13    counsel in connection with any such suit, claim or proceeding…" Motion, Exh. A

14    (Operating Agreement § 5.11(i)). Further, § 6.8(w) states "without the consent of

15    the Members holding a majority of the Preferred Units, the Company, a Portfolio

16    Company, or the Board, on behalf of the Company or a Portfolio Company … shall

17    not enter into any commitment to … [d]issolve or liquidate the Company." Motion,

18    Exh. A (Operating Agreement § 6.8(w)).

19    Because the Operating Agreement provides the broad grant of authority to

20    the Board for the pursuit of litigation and a mechanism for the liquidation of the

21    company, § 8847 of the Pennsylvania Act does not apply in this case. In short, §§

22    5.1, 5.11(i) and 6.8(w) of the Operating Agreement grant the Board and the holders

23    of the Preferred Units the authority to file bankruptcy for Beacon.

24    Here, the bankruptcy filing was authorized under the Operating Agreement.

25    The filing was authorized in compliance with the Operating Agreement pursuant to

26    a Board resolution which was signed by Charles Crookendon, the sole holder of

27    the Preferred Units in Beacon who gave his consent in writing to the filing.  The

28    Court notes that Movant has not challenged in its Motion the authority of the

1    members of the Board to take authorized actions under the Operating Agreement

2    or Crookendon as the holder of the Preferred Units to authorize the filing, only that

3    the filing must have been authorized under the statute rather than the Operating

4    Agreement.  Further, there is no evidence before the Court of any impropriety or

5    error in the authorization.  Movant has not met her burden to demonstrate that the

6    filing was not properly authorized.

7        B. Automatic Dismissal Under Local Bankruptcy Rule 1017-2(a)

8        Rule 1007(c) requires the debtor to file its schedules, statements and lists

9    (collectively, the "Case Commencement Documents") within 14 days of the filing

10   of the petition. FRBP 1007(c). This includes Official Form A/B.  LBR 1017-

11   2(a)(3) authorizes the court to dismiss a case, without further notice or hearing, if

12   the debtor fails to file the Case Commencement Documents "within 14 days from

13   the filing of the petition or an extension of such 14-day period granted by an order

14   of the court." Under LBR 1001-1(d), the Court may waive the application of any

15   Local Bankruptcy Rule in any case or proceeding, or make additional orders, as it

16   deems appropriate, in the interest of justice.

17       "Bankruptcy Rule 9029 allows for the making of local bankruptcy rules so

18   long as they are not 'inconsistent' with the more general Bankruptcy Rules." FRBP

19   9029a. A local rule may dictate "practice or procedure but may not enlarge,

20   abridge or modify any substantive right." In re Sunahara, 326 B.R. 768, 782 (9th

21   Cir. BAP 2005) citing In re Rivermeadows Assocs., Ltd., 205 B.R. 264, 269 (10th

22   Cir. BAP 1997).

23       Here, Movant states that the Court is required to dismiss the case pursuant to

24   LBR 1017-2(a) based on Beacon's failure to file complete schedules.  While the

25   Court has concerns regarding the dismissal requirement in LBR 1017-2(a)(3)

26   without notice and a hearing, the Court need not address any conflict between the

27   LBR and § 707(a)(3) which requires notice and a hearing before dismissal, because

28   that issue is not determinative of the Court's ruling.  First, a hearing on dismissal

1   was held so the hearing requirement was satisfied.  Further, dismissal is not

2   required because the schedules were filed, albeit without substantial information.

3   Moreover, since the filing, Trustee has actively pursued information from Beacon,

4   which has no active business and is merely a holding company for its subsidiaries.

5   Given the Trustee's efforts to investigate and recover assets of the estate for the

6   benefit of creditors, in the interests of justice the Court waives the requirement of

7   LBR 1017-2(a) for dismissal in any event.

8          Accordingly, the Court determines that Beacon's failure to file complete

9   schedules does not require dismissal of its chapter 7 case.

10          C. Prejudice to Creditors

11          Even if Movant could make a showing of cause, the Court cannot dismiss

12   the case if there is a showing of legal prejudice to the creditors. See In re Leach,

13   130 B.R. at 857; see also In re Hall, 15 B.R. 913, 917 (9th Cir. BAP 1981); In re

14   Int'l Airport Inn P'ship, 517 F.2d 510, 511 (9th Cir. 1975). Legal prejudice means

15   "prejudice to some legal interest, some legal claim, some legal argument,"

16   Westlands Water Dist. v. U.S., 100 F3d 94, 97 (9th Cir. 1996), but the issue of

17   prejudice "may be evaluated using both legal and equitable consideration,"

18   Hickman v. Hana (In re Hickman), 384 B.R. 832, 841 (9th Cir. BAP 2008).

19   Movant has the burden of proof to show that dismissal would not prejudice the

20   creditors. Id. at 840.

21          Prejudice is shown where estate assets, available to creditors in the

22   bankruptcy case and needed to pay their claims, would become unavailable upon

23   dismissal. See In re Komyathy, 142 B.R. 755, 757 (Bankr. E.D. Va. 1992) ("[I]f

24   dismissal were to be granted, the parties would no longer be under the jurisdiction

25   of this court nor the Bankruptcy Code. The trustee would be relieved of his

26   obligation to ensure payment to the creditors, and conversely, the creditors would

27   lose the guarantee of repayment. In the absence of affirmative consent of the

28   creditors, this lost guarantee constitutes plain legal prejudice."); In re Stephenson,

1 | 262 B.R. 871 (Bankr. W.D. Okl. 2001) (prejudice found where debtor might spend

2 | tax refund); <u>In re Scafroth</u>, 2012 WL 1884895, at *3 (Bankr. D.N. M) (prejudice

3 | found where money in a Swiss bank account would become unavailable to

4 | creditors if the case were dismissed); <u>In re Leach</u>, 130 B.R. at 857 (dismissal

5 | would prejudice creditors because then debtor could claim a homestead exemption,

6 | something he had not done before filing bankruptcy); <u>In re Akbarian</u>, 2013 WL

7 | 6710347, at *3 (Bankr. D. Utah) (loss of potential judgment setting aside

8 | fraudulent transfer).

9 |      Here, Trustee has identified a major potential asset of Debtors' estates in

10 | their right to receive payroll reimbursement from the IRS for certain employee

11 | retention credits (the "ERC Reimbursements") totaling approximately $800,000.

12 | Further, Trustee maintains through his ongoing investigation that Debtors' estates

13 | have potential chapter 5 avoidance claims and breach of fiduciary claims against

14 | third parties, including Aion, related to the improper operation of Beacon and the

15 | sale of Choice's assets. Trustee states there is compelling evidence of prepetition

16 | corporate actions that give rise to Debtors' estates claims against various third

17 | parties. Trustee concludes that because Trustee can expand the assets available to

18 | satisfy creditor claims by monetizing assets, pursuing collection of the ERC

19 | Reimbursements and recovering claims that Debtors' estates have against third

20 | parties, the case should not be dismissed.  Trustee has demonstrated legal prejudice

21 | to creditors if the case is dismissed.

22 |      In contrast, Movant has not demonstrated that legal prejudice will not result

23 | from dismissal of the case. Movant has not met her burden to establish that

24 | dismissal of the case would not prejudice the estate and all interested parties.

25 | //

26 | //

27 | //

28 | //

## C. CONCLUSION

Based on the foregoing, Movant's Motion is denied. The Court will enter the order consistent with this memorandum of decision.

Date: February 3, 2023

*Julia W Brand*

Julia W. Brand
United States Bankruptcy Judge