Lovee D. Sarenas (SBN. 204361)
*lovee.sarenas@dinsmore.com*
Jonathan Serrano (SBN. 333225)
*jonathan.serrano@dinsmore.com*
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 1765
Los Angeles, CA  90071
Telephone:  213.335.7737

Counsel to Peter J. Mastan,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BEACON ORGANICS, LLC,<br><br>   Debtor. | Case No. 2:22-bk-11295-WB<br><br>Chapter 7<br><br>**MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND AION ACQUISITION LLC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF**<br><br>Date: October 5, 2023<br>Time: 2:00 p.m.<br>Judge: Hon. Julia W. Brand<br>Place: Courtroom 1375<br>    255 E. Temple Street<br>    Los Angeles, CA 90012 |

#39714692v1

Peter J. Mastan, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates (each an "Estate" and collectively, the "Estates") of debtors Beacon Organics, LLC ("Beacon"), Greenerways LLC ("Greenerways"), and Choice Essential Oils, LLC ("Choice" and, collectively with Beacon and Greenerways, the "Debtors"), hereby files this Motion in the above-captioned case for the entry of an order approving that certain Settlement Agreement[1] (the "Agreement") by and between the Trustee, solely in his capacity as the Trustee for the Estates, on the one hand, and Aion Acquisition LLC, for itself and on behalf of and as successor in interest to P2Bi Holdings LLC ("Aion") on the other hand (each, a 'Party" and together, the "Parties").  Specifically, the Trustee seeks an order that does the following:

1.      Grants the Motion;

2.      Approves the terms and conditions of the Agreement, which is attached to the Motion as **Exhibit 1**;

3.      Authorizes the Trustee to settle with Aion on the terms set forth in the Agreement and to take any and all steps reasonably necessary to consummate the Agreement and related transactions;

4.      Provides for the allowance of Aion's claim pursuant to the terms and conditions set forth in the Agreement;

5.      Authorizes the Parties to perform the terms of the Agreement, including granting the releases contemplated in the Agreement, and finds, based on all of the facts and circumstances, that all Parties have acted in good faith and negotiated at arm's length in entering into the Agreement;

6.      Provides that the Court retains jurisdiction to interpret and enforce the Agreement and the Court's order relating thereto; and

7.      Determines that adequate notice of the Motion was given.

The Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"), 11 U.S.C. §§ 105 and 363, and Rules 2002-1 and 9013-1 of the Local

---

1      Capitalized terms not defined herein have the same meaning ascribed to them in the Settlement Agreement.

2

#39714692v1

1   Bankruptcy Rules for the Central District of California ("LBR") on the ground that the proposed

2   settlement (i) resolves the dispute between the Estates and Aion on all matters involving Aion, the

3   Debtors and the Estates, including the secured claim of Aion against the Estates, the dispute relating

4   to the Greenerways Estate's Employee Retention Credit ("ERC"), and the Estates' claims against

5   Aion; and (ii) is in the best interests of the Estates and their respective creditors.

6       Pursuant to the proposed settlement,[2] Aion shall have an allowed reduced claim in each of

7   the Chapter 7 Cases, on a joint and several basis, in the amount of $5,669,258.94 ("Aion's Allowed

8   Claim").  The Greenerways' Estate will retain 75% of the ERC that Greenerways received in the

9   amount of $879,369.82, unencumbered by Aion's lien and security interest. Aion will retain a first-

10   priority lien on, and security interest in, 25% of the ERC such that (a) the Trustee shall retain

11   $642,241.34 of the ERC Payment for the Greenerways' Estate, unencumbered by any lien or

12   security interest of Aion, and (b) Aion shall retain a first-priority lien on and security interest in

13   $214,080.45 of the ERC (the "Aion Portion of ERC Payment").  Aion shall have an allowed secured

14   claim in the Greenerways case solely to the extent of the Aion Portion of the ERC Payment. Aion

15   shall have an allowed unsecured claim in each of the chapter 7 cases for all sums owed on account

16   of Aion's Allowed Claim, less the Aion Portion of ERC Payment. Any payment of Aion's Allowed

17   Claim or any portion thereof, from any of the Estates, including, without limitation, payment of the

18   Aion Portion of ERC Payments, shall be deemed to reduce Aion's Allowed Claim against all Estates

19   on a dollar-for-dollar basis so that Aion shall be entitled to recover no more than Aion's Allowed

20   Claim from the Estates in the aggregate. The Parties are also exchanging mutual general releases.

21   Given the circumstances surrounding the loan made by Aion to the Debtors, the Trustee does not

22   believe that a significantly better net result would be obtained if parties' disputes were successfully

23   litigated to conclusion.

24       The Motion is based on (a) the Notice of Motion filed concurrently herewith; (b) the

25   attached Memorandum of Points and Authorities, Declarations of Peter J. Mastan and

---

[2]   The actual terms of the proposed settlement are as set forth in the Agreement and a summary is being provided in this Motion for convenience.  Parties are encouraged to read the Agreement. Any conflict between the summary in this Motion and the terms of the Agreement shall be controlled by the terms of the Agreement.

#39714692v1

1    Lovee Sarenas, and exhibit(s) submitted in support of the Motion, (c) the pleadings on file in these

2    cases of which the Court is requested to take judicial notice, and (d) such other pleadings and

3    evidence as may be properly submitted in connection with the Motion.

4         Any opposition to the Motion must be filed with the Bankruptcy Court and served on the

5    Trustee, Aion, the Debtors, and the United States Trustee no later than 14 days before the hearing

6    on the Motion at the following addresses:

7    **For Filing with the Court:**                      **For Service on Judge Brand:**
      Clerk's Office                                       Hon. Julia W. Brand
8    United States Bankruptcy Court                       United States Bankruptcy Court
      255 E. Temple Street                                 255 E. Temple Street, Suite 1382
9    Los Angeles, CA 90012                                Los Angeles, CA 90012

10   **For Service on the Trustee:**                      **For Service on the U.S. Trustee:**
      Lovee D. Sarenas, Esq.                               Office of the U.S. Trustee
11   Dinsmore & Shohl LLP                                 915 Wilshire Blvd., Suite 1850
      550 S. Hope Street, Suite 1765                       Los Angeles, CA 90017
12   Los Angeles, CA 90071-2627

13   **For Service on Counsel for the Debtors**          **For Service on the Debtors**
      Hamid R. Rafatjoo, Esq.                              Greenerways LLC
14   Raines Feldman Littrell LLP                          2850 East Pico Blvd.
      1900 Avenue of the Starts, 19th Fl                   Los Angeles, CA 90023
15   Los Angeles, CA 90067

16   **For Service on Aion**                              **For Service on Beacon**
      Adam L. Hirsch, Esq.                                 Beacon Organics, LLC
17   Kyle K. Burgi, Esq.                                  2850 East Pico Blvd.
      Davis Graham & Stubbs LLP                            Los Angeles, CA  90023
18   1550 17th Street, Suite 500
      Denver, CO 80202                                     **For Service on Choice**
19                                                         Choice Essential Oils LLC
      and                                                  3115 E. 12th Street
20                                                         Los Angeles, CA 90023

21   Jerrold L. Bregman, Esq.
      Brutzkus Gubner Rozansky
22   Seror Weber LLP
      21650 Oxnad St, Ste 500
23   Woodland Hills, CA 90032

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

4

1        WHEREFORE, the Trustee, through his counsel, respectfully requests that the Court enter an

2  order granting the relief requested in this Motion, as well as such further relief as the Court deems just

3  and proper.

4

5  DATED: September 14, 2023          Respectfully submitted,

6                          DINSMORE & SHOHL LLP

7                          By: /s/ Lovee Sarenas

8                            Lovee D. Sarenas
                            Jonathan Serrano

9                          Counsel to Peter J. Mastan, Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#39714692v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

With this Motion, the Trustee requests the Court's approval of a settlement between the Trustee on behalf of the Estates of Beacon, Choice and Greenerways, on the one hand, and Aion, on the other hand, that resolves not only a highly contested motion filed by Aion on April 13, 2023 with respect to its purported security interest in the ERC of the Greenerways' Estate ("363(e) Motion") but also the long-standing dispute between Aion and the Estates regarding the secured claim of Aion against the three Estates and the Estates' claims against Aion surrounding the transactions and loan between and among the Debtors, and Aion and its predecessors.  The settlement further provides a path for the administration of the Estates now that the Parties have resolved the extent of Aion's lien without the uncertainty and additional cost of administration brought about by increased litigation.  Accordingly, the Trustee believes that the settlement is in the best interest of all Estates and their respective creditors and should be approved.  In support of the Motion, the Trustee asserts the following facts and legal support.

## II.    STATEMENT OF FACTS

### A.    The Debtors' Bankruptcy Cases

On March 9, 2022, Greenerways, a Pennsylvania limited liability company filed its voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court"). On the same date, Debtor's affiliates Choice, a Nevada limited liability company, and Beacon, also a Pennsylvania limited liability company, likewise commenced their respective voluntary bankruptcy cases. Beacon, is the parent company of Greenerways and Choice.

To the Trustee's knowledge, Beacon does not operate a business or hold any physical assets. Its only known asset is its membership interests in the two companies.  Greenerways was an operating entity that manufactured, among other things, sanitizers, insect repellants, organic shampoos and conditioner and cleaning solutions with Costco as one of its major accounts.  Choice, on the other hand, produced essential oils. Its major account is with Unilever.  Prior to the filing of

/ / /

6

1    the bankruptcy cases, Greenerways ceased all business operations and terminated employment of all

2    employees.

3         Shortly after the filing of the bankruptcy cases, Peter J. Mastan was appointed as the

4    Chapter 7 Trustee in each of the bankruptcy cases.  He continues to serve in this capacity at this

5    time.  The claims bar date in these cases expired on July 1, 2022.

6         **B.**    **The Estate's Employee Retention Credit Fund**

7         Prior to the filing of the bankruptcy cases on or about November 8, 2021, Greenerways,

8    under its name "Greener Days LLC," filed an Adjusted Employer's Quarterly Federal Tax Return F-

9    941 pursuant to section 2301 of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L.

10   No. 116-136, 134 Stat. 281 (2020), and subsequent amendments thereto ("CARES Act"), requesting

11   an employee retention tax credit against the Greenerway's employment taxes for the third quarter of

12   2021 in the sum of $879,369.82 (the "ERC"). Section 2301 of the CARES Act permits eligible

13   employers that continued to pay employees while its business operations were shut down due to the

14   COVID-19 pandemic or had significant declines in gross receipts between March 2020 and October

15   2021 to claim the ERC against their payroll taxes.

16        **C.**    **Aion's Secured Claim**

17        On or about July 1, 2022, Aion filed the following proofs of claim in each of the Debtor's

18   bankruptcy cases asserting a secured claim against all Estates in the aggregate sum of $9,081,651.03

19   ("Aion Claims"):[3]

20             a.  Greenerways case:    Claim 34

21             b.  Choice case:    Claim 3

22             c.  Beacon case:    Claim 4

23   The Aion Claims are predicated upon a credit facility that was initially entered into between the

24   Debtors and a specialty lender called P2BInvestor Incorporated pursuant to a Financing and Security

25   Agreement ("FSA").  In connection with the FSA, Debtors granted P2BInvestor a blanket lien.

26   According to the proofs of claim filed by Aion, the Debtors thereafter entered into an Amended and

27

28   _____
     3    The Trustee requests the Court to take judicial notice of Aion's proofs of claim filed in each
     Debtor's case.

7

1  Restated Financing and Security Agreement ("AFSA") and related secured transactions with P2Bi

2  Holdings, LLC ("Holdings").  Copies of the AFSA and related agreements were attached as exhibits

3  to each proof of claim filed in each case.  The loan was secured by a lien granted by the Debtors on

4  certain properties of the Debtors as collateral.  The loan was also guaranteed by Jamie Bella

5  ("Bella") and Sharon Neiburg ("Neiburg") in favor of Holdings.  Aion is the successor in interest to

6  Holdings under the AFSA.

7       In connection with Aion's asserted secured claim, Aion commenced an action in in the

8  District Court for the City and County of Denver, Colorado entitled *Aion Acquisition LLC v*

9  *Beacon Organics, LLC; Greenerways, LLC; Choice Essential Oils, LLC; Jayme Bella; and*

10  *Sharon J. Neiburg* (Case No. 2021CV33426) ("Colorado Action") asserting, *inter alia*,

11  purported breach of the AFSA, the guaranties, and other loan agreements and fraudulent

12  representation.  The Colorado Action is stayed as to the Debtors.

13      **D.**    **Trustee's Claims Against Aion[4]**

14       In connection with the AFSA, Holdings issued a Notice of Event of Default dated

15  January 25, 2021 claiming several covenant defaults against the Debtors.  This began a series of

16  forbearance agreements between Holdings and the Debtors that ultimately resulted in Bella and

17  Neiburg pledging their membership interests in Beacon in favor of Holdings ("Pledge

18  Agreements"), which when combined, comprised the majority of A Unit shares in the company.

19  The Pledge Agreements eventually led to Aion's, as successor to Holdings, foreclosure of the

20  membership interests in Beacon.

21       Aion's foreclosure of the Beacon membership interests resulted in Aion exercising its voting

22  rights as the majority interest-holder and ousting Bella and other members of the board of managers

23  and installing new board members in December of 2021.  The newly constructed board thereafter

24  entered into a series of resolution essentially changing the management of the Debtors' businesses

25  and eventually approving the sale of Choice assets to AionBeacon LLC, an affiliate of Aion

26   

27     4     Trustee requests the Court to take judicial notice of each Opposition filed by Aion and the
Trustee to Jayme Bella's Motion To Convert This Chapter 11 Case Pursuant To 11 U.S.C. § 706(b)

28  which discussed the nature of Aion's lien and the transactions and events relating to such lien
leading up to the Debtors' bankruptcy filing. [ECF Nos. 67, 68, 77]

#39714692v1

1  pursuant to a $2 million credit bid. With the foreclosure of the membership interests, Aion

2  purportedly gained full control of the Debtors.

3      Based on these prepetition transactions, Choice and Beacon Estates have potential lender

4  liability claims in addition to the Trustee's avoidance powers against Aion relating to the sale of the

5  assets of Choice to AionBeacon, an affiliate of Aion.  Without proper valuation of the Choice assets,

6  substantially all of Choice's assets were purportedly transferred to AionBeacon including Choice's

7  product line and contract with Unilever, various other third-party contracts, accounts receivables,

8  inventory, and certain intellectual property rights, while a significant amount of the existing

9  liabilities remained with Choice.  This was accomplished by reconstituting Beacon's board of

10 directors immediately prior to the sale who, thereafter, authorized the purported sale for the benefit

11 of Aion.  Absence of an independent board who signed the purchase agreement as both the

12 representatives of AionBeacon and of Choice caused Choice to lose its ability to generate revenue.

13 Aion strongly denies these contentions and disputes lender liability and the Estates' ability to avoid

14 the sale to Choice.

15     **E.      The Trustee's Motion for Authority to Deposit Funds on Account of the ERC**

16     Through the Court's negative notice procedure, the Trustee sought authorization to deposit

17 certain funds received from the IRS in the amount of $856,321.79 on account of the Greenerway's

18 ERC (the "ERC Motion") [Docket No. 99]. The IRS retained approximately $76,374.00 of

19 Greenerway's ERC (the "ERC Holdback") in connection with its tax claim against Greenerway's

20 estate.

21     On June 15, 2023, the Court entered its *Order Granting Motion for Authority to Deposit*

22 *Funds of the Debtor Into the Estate's Trustee Account* [Docket No. 121], thereby authorizing the

23 Trustee to deposit the funds into the estate's trustee account and ordering that the funds be

24 segregated and prohibited from use until further Court order.

25     **F.      Aion's Motion to Prohibit Use of the ERC**

26     While Aion did not oppose the requested relief in the ERC Motion, it sought to limit the

27 Trustee's ability to use the funds pursuant to 11 U.S.C. § 363(e), asserting a secured interest in the

28 ERC in its *Motion of Aion Acquisition LLC to Prohibit Use or Other Disposition of Employee*

#39714692v1

1  *Retention Credit Funds Pursuant to 11 U.S.C. § 363(e)* [Docket No. 101] (the "363(e) Motion").

2  The 363(e) Motion contends that the funds must be segregated pursuant to 11 U.S.C. § 363(c)(4).

3  Aion asserts a secured interest against not only the ERC but also any ERC Holdback that the Trustee

4  may recover in the future, pursuant to AFSA.

5       According to Aion's Motion, the AFSA granted a first-priority lien on, and security interest

6  in, all of the then-owned and after-acquired personal property and other assets and associate

7  proceeds, particularly, the Debtor's general intangibles, cash and cash equivalents, accounts, and

8  other receivables, rights to receive payment of money, income tax refunds, and all associated

9  proceeds. 363(e) Mot. 3–4. In relevant part, the FSA defined Aion's collateral as:

10
    all of then-owned and after-acquired personal property of the Borrower[s]" including
11
    "(1) cash and cash equivalents including those in Lender's possession; (2) present
    and future accounts, and other receivables, instruments, contract rights and other
    rights to receive payment of money or goods;. . . (8) licenses, leases and other general
12
    intangibles; . . . (d) income tax refunds. . . .

13  *Id.* at 79, Ex. 2. The Motion argues that the ERC constitutes Aion's collateral under the FSA as a

14  general intangible. *Id.* at 6.

15       The Court requested supplemental briefing from the Parties on the extent of Aion's collateral

16  particularly on whether the ERC is a general intangible and whether Greenerways' interest in the

17  ERC vested prepetition.  The issues have been fully briefed by both sides and the continued hearing

18  on the 363(e) Motion is set for October 5, 2023.

19       With this compromise, the Parties addressed all of the foregoing issues in lieu of further

20  litigation.  Trustee believes that the Agreement reached enables the Estates to move forward with

21  administration and reduces the cost of litigation.

22  **III.**   **SUMMARY OF AGREEMENT TERMS AND CONDITIONS**

23       Subject to Court approval, and on the terms set forth in the Agreement, the Trustee has

24  reached a settlement with Aion resolving all of their disputes and claims against each other,

25  including disputes with respect to the ERC, the Aion Motion, Aion's secured claims against the

26  Estates, and the Trustee's claims against Aion. A copy of the Agreement is attached hereto as

27  **Exhibit 1**.

28       The Agreement provides for the following:

#39714692v1

1.      Aion's waiver of its lien and security interest with respect to 75% of the ERC and retention of a first-priority lien on and security interest in 25% of the ERC such that (a) the Trustee shall retain $642,241.34 of the ERC Payment for Greenerways' estate, unencumbered by any lien or security interest of Aion, and (b) Aion shall retain a first-priority lien on and security interest in $214,080.45 of the ERC (the "Aion Portion of ERC Payment").

2.      Limitation, reduction, and allowance of each of Aion's claims as follows:

a.      Aion shall have an allowed reduced claim in each of the Chapter 7 Cases, on a joint and several basis, in the amount of $5,669,258.94 ("Aion's Allowed Claim").

b.      Aion shall have an allowed secured claim in the Greenerways case solely to the extent of the Aion Portion of the ERC Payment;

c.      Aion shall have an allowed unsecured claim in each of the chapter 7 cases for all sums owed on account of Aion's Allowed Claim, less the Aion Portion of ERC Payment.

3.      Any payment of Aion's Allowed Claim or any portion thereof, from any of the Estates, including, without limitation, payment of the Aion Portion of ERC Payments, shall be deemed to reduce Aion's Allowed Claim against all Estates on a dollar-for-dollar basis so that Aion shall be entitled to recover no more than Aion's Allowed Claim from the Estates in the aggregate.

4.      Parties give mutual general release to the other.

5.      The Parties agree to cooperate to dismiss the Debtors from the Colorado Action consistent with the terms of the Agreement.

6.      Upon the Effective Date of the Agreement, the Parties' dispute with respect to the 363(e) Motion is deemed resolved.

7.      The Agreement and the releases therein do not affect the Trustee's or Aion's rights or claims against any other person or entity not released or a party to the Agreement.

8.      The Agreement and the obligations of the Trustee under the agreement are subject to this Court's approval and the Bankruptcy Court shall retain jurisdiction to hear disputes arising from the Agreement.

#39714692v1

## IV.    STANDARD FOR APPROVAL OF A SETTLEMENT

The authority to approve a trustee's compromise of a controversy is set forth in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which provides in relevant part that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "A court may approve a compromise or settlement only when it is 'fair and equitable.'" *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson,* 479 U.S. 854 (1986) (citation omitted).

In determining whether a proposed settlement is fair and equitable, courts in the Ninth Circuit must consider the following factors:

> (a) the probability of success in the litigation;
> (b) the difficulties, if any, to be encountered in the matter of collection;
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d at 1381. The bankruptcy court has "great latitude in approving compromises and settlements." *Id.* A court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983) (citation omitted). A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken. *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849, 851–52 (9th Cir. 1976). This considerable discretion is based upon the fact that the "law favors compromise and not litigation for its own sake." *In re A&C Properties*, 784 F.2d at 1381; *see also In re New York, New Haven and Hardford R.R. Co.*, 632 F.2d 955, 959 (2d Cir. 1980) (generally, courts favor compromises as a "normal part of the process of reorganization"). Here, each of the factors enumerated by the Ninth Circuit is satisfied, and thus, approval of the Agreement is warranted.

/ / /

/ / /

/ / /

#39714692v1

## V.    THE PROPOSED SETTLEMENT IS FAIR AND EQUITABLE

The Trustee's proposed settlement is fair, equitable, and reasonable, given the particular circumstances in these cases. All four of the factors from *A & C Properties* weigh in favor of approving this Agreement.

### A.    Probability of Success in Litigation

This factor weighs in favor of approving the Agreement. The Trustee believes that the novelty of the issues presented by the Parties' dispute on whether a security interest extends to the ERC (a consequence of an unprecedented economic halt due to the pandemic) translates to a high risk of loss for either side, and will more likely result in an appeal of the Court's ruling from the unsuccessful party.

Further, the facts surrounding the transactions leading up to the foreclosure and sale of Choice rely on disputed allegations of the Debtors' former management that appear were imposed by Aion and the management existing prior to their installation. Their respective disputes amongst themselves suggest that any testimony from these parties are self-interested, unreliable, and adverse to the Estates. Jaymie Bella and/or Sharon Neiburg are also involved in their own litigation with Aion and Aion-related parties.  As a result, obtaining their cooperation has been difficult.

For these reasons, success in litigation is uncertain.  The Parties' compromise removes this uncertainty concerning the ERC by determining the extent of Aion's lien and the rest of its claim as unsecured sharing with all other unsecured creditors of the Estates.  It further provides for a dismissal of the Colorado Action against the Debtors providing finality for the Estates in that regard.

### B.    Collectability on a Judgment

This factor also weighs in favor of approving the Agreement. Any judgment obtained against Aion would likely be collectable. However, the Agreement represents a cost-effective and reasonable resolution of the Parties' dispute without the increased cost of litigation and appeals that can minimize any recovery.  At the same time, the settlement enables the Greenerways Estate to access the ERC to pay unsecured creditors and administrative claims of its Estate.

/ / /

13

#39714692v1

C.    **Complexity of the Litigation Involved and Related Expense**

This factor supports approving the Agreement. Absent a settlement with Aion, initiating a future adversary proceeding against it would be expensive. As explained above, the ERC was borne out of the CARES Act, which was enacted as a response to the impact that the COVID-19 pandemic had on businesses.  There has been no precedence on the issue of whether the ERC is subject to a security interest of a lender.  It is highly likely that, even with success at the Bankruptcy Court level, a subsequent appeal would ensue.

Similarly, the Estates are faced with litigation in Colorado (albeit stayed at this time) and at the same time, will have to litigate the Estates' lender liability and/or commercial tort claims against Aion in addition to commencing an avoidance action against Aion.  The Estates will likely contest any motion from Aion seeking relief from the automatic stay against assets of the Estate. With minimal cash in the Estates, any litigation against Aion would be particularly costly and will outweigh any benefit of recovery.  This compromise avoids the unnecessary delay and cost of litigation.

On the other hand, the proposed settlement provides the Greenerway's Estate with available cash and a reduction of a substantial amount of Aion's secured claim across the board from approximately $9 million to approximately $5 million. Through the proposed settlement, this outcome is achieved without incurring the legal fees and costs necessary to litigate an adversary proceeding.

D.    **Paramount Interest of Creditors**

Trustee believes that the compromise benefits all creditors of all Estates.  As such, this factor weighs heavily in favor of approving the settlement.  Upon consummation of the Agreement, Trustee would have resolved the Estates' entire dispute with Aion and Aion would have released the Estates in all respects except for the Aion Allowed Claim and the Aion Portion of the ERC Payment. The Estates are thus positioned to benefit from the reduction of the secured portion of Aion's claim, as the assets of all three Estates are potential collateral under Aion's lien.

In exchange for Greenerways paying the Aion Portion of the ERC Payment, Aion is not only reducing its claim to approximately $5 million, it is also releasing its secured claim against the

#39714692v1

balance of Aion's Allowed Claim.  This release enables the Trustee to free up funds of the

Greenerways Estate for distribution to unsecured creditors.  Under the AFSA, Greenerways is

obligated, along with Beacon and Choice to Aion on account of the loan.  Thus, the payment from

the ERC is a dollar for dollar reduction of Greenerways' obligation under the AFSA.  In addition, the

reduction benefits unsecured creditors considering that secured claims will be less than they would

have been otherwise.

The Beacon and Choice's Estates benefit as well through the significant reduction in the

allowed claim of Aion from $9 million to $5 million and because Aion essentially will have a single

unsecured claim against all of the Estates, the unsecured creditors of each Estate share *pari passu*

with Aion's allowed unsecured claim.  Any payment to Aion reducing the Aion Allowed Claim

against one Estate also reduces its allowed unsecured claim against another Estate.  Last, the mutual

general releases between the Parties affect all Estates while at the same time, preserve the Estates'

rights and claims against other persons not released or were not parties to the Agreement.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, the Trustee believes that the circumstances of these cases

warrant approval of the Agreement as fair and reasonable in satisfaction of the Ninth Circuit factors

of *A&C Properties*.  The Motion should be granted, and an order entered that provides the following

relief:

1.    Grants the Motion;

2.    Approves the terms and conditions of the Agreement;

3.    Authorizes the Trustee to settle with Aion on the terms set forth in the Agreement

and to take any and all steps reasonably necessary to consummate the Agreement and related

transactions;

4.    Provides for the allowance of Aion's claim pursuant to the terms and conditions set

forth in the Agreement;

5.    Authorizes the Parties to perform the terms of the Agreement, including granting the

releases contemplated in the Agreement, and finds, based on all of the facts and circumstances, that

all Parties have acted in good faith and negotiated at arm's length in entering into the Agreement;

#39714692v1

6.      Provides that the Court retains jurisdiction to interpret and enforce the Agreement and the Court's order relating thereto;

7.      Determines that adequate notice of the Motion was given; and

8.      Provides for such other reliefs that the Court deems just and proper.


DATED: September 14, 2023                    Respectfully submitted,

                                             DINSMORE & SHOHL LLP


                                             By: /s/ Lovee Sarenas
                                                 Lovee Sarenas
                                                 Jonathan Serrano
                                                 Counsel to Peter J. Mastan, Chapter 7 Trustee

16

#39714692v1

## DECLARATION OF PETER J. MASTAN

I, PETER J. MASTAN, declare:

1.      I am the Chapter 7 Trustee for the bankruptcy estates (the "Estates") of debtors Beacon Organics, LLC ("Beacon"), Greenerways LLC ("Greenerways"), and Choice Essential Oils, LLC ("Choice" and, collectively with Beacon and Greenerways, the "Debtors"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.      I submit this Declaration in support of the *Motion for Order Approving Settlement Agreement Between the Trustee and Aion Acquisition LLC* to which this Declaration is attached.

3.      On March 9, 2022, Greenerways, a Pennsylvania limited liability company, filed its voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court"). On the same date, Debtor's affiliates Choice, a Nevada limited liability company, and Beacon, also a Pennsylvania limited liability company, likewise commenced their respective voluntary bankruptcy cases.

4.      Shortly after the filing of the bankruptcy cases, I was appointed as the Chapter 7 Trustee in each of the bankruptcy cases.  I continues to serve in this capacity at this time.

5.      Based on my review of the record in these cases, and the documents available to me relating to these cases, and my discussions with the principals of the Debtor and major parties in the case, I am informed and therefore believe that, Beacon, is the parent company of Greenerways and Choice.  To my knowledge, Beacon does not operate a business or hold any physical assets. Its only asset known to me is its membership interests in the two companies.  Greenerways was an operating entity that manufactured, among other things, sanitizers, insect repellants, organic shampoos and conditioner and cleaning solutions with one if its major account with Costco. Choice, on the other hand, produced essential oils. Its major account is with Unilever.  Prior to the filing of the bankruptcy cases, Greenerways ceased all business operations and terminated employment of all employees.

6.      I am informed and therefore, believe that on or about November 8, 2021,

17

#39714692v1

Greenerways, under its name "Greener Days LLC," filed an Adjusted Employer's Quarterly Federal Tax Return F-941 pursuant to section 2301 of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), and subsequent amendments thereto ("CARES Act"), requesting an employee retention tax credit against the Greenerway's employment taxes for the third quarter of 2021 in the sum of $879,369.82 (the "ERC"). To my understanding, § 2301 of the CARES Act permits eligible employers that continued to pay employees while its business operations were shut down due to the COVID-19 pandemic or had significant declines in gross receipts between March 2020 and October 2021 to claim the ERC against their payroll taxes.

7.      Attached hereto as **Exhibit 1** is a true and correct copy of that certain Settlement Agreement (the "Agreement") between Aion and me (in my capacity as Trustee for each of the Debtors' Estates).

8.      With the assistance of counsel, I negotiated an Agreement that was the result to an extensive and arms' length negotiations between Aion and the Estates by and through counsel in an effort to reach a compromise of all of the Parties' dispute including the purported lien on the ERC payment, the secured interest of Aion against the Estates, and the Estates' claims against Aion.

9.      I believe that the novelty of the issues presented by the Parties' dispute on whether a security interest extends to the ERC (a consequence of an unprecedented economic halt due to the pandemic), translate to a high risk of loss for either side and will more likely result in an appeal of the Court's ruling from the unsuccessful party.  Further, the facts surrounding the transactions leading up to the foreclosure and sale of Choice rely on disputed allegations of the Debtors' former management both management that appears were imposed by Aion and the management existing prior to their installation. Their respective disputes amongst themselves suggest that any testimony from these parties, are self-interested, unreliable and adverse to the Estates.  Jaymie Bella and/or Sharon Neiburg are also involved in their own litigation with Aion and Aion-related parties.  As a result, obtaining their cooperation has been difficult.

10.      With this settlement, Aion's claim is significantly reduced, and its secured claim is waived as against the Estates of Beacon and Choice.  The secured claim against Greenerways is reduced as well and limited to 25% of the ERC.  The remaining unsecured claim enables other

#39714692v1

creditors of all Estates to share *pari passu* with Aion's unsecured claim.  The compromise further resolves the Debtors' involvement in the Colorado lawsuit and the dispute concerning the ERC.

11.    I believe the settlement reflected in the Agreement is fair, equitable, and reasonable under the circumstances of these cases. I believe that the Agreement reflects all of the terms of the settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  September 14, 2023

_____
PETER J. MASTAN

#39714692v1

**DECLARATION OF LOVEE D. SARENAS**

I, LOVEE D. SARENAS, declare:

1.      I am an attorney admitted to practice before this Court and I am a partner in Dinsmore & Shohl LLP, counsel to Peter J. Mastan, the Chapter 7 Trustee ("Trustee") of the bankruptcy estates ("Estates") of debtors Beacon Organics, LLC ("Beacon"), Greenerways LLC ("Greenerways"), and Choice Essential Oils, LLC ("Choice" and, collectively with Beacon and Greenerways, the "Debtors").

2.      Except as expressly stated otherwise, I have personal knowledge of the facts set forth below, and I could and would competently testify under oath thereto if requested to do so.

3.      I submit this declaration in support of the *Motion for Order Approving Settlement Agreement Between the Trustee and Aion Acquisition LLC* to which this Declaration is attached.

4.      The Court may take judicial notice of the following:

        a.      On July 1, 2022, Aion filed the following proofs of claim in each of the Debtor's bankruptcy cases asserting a secured claim against all Estates in the aggregate sum of $9,081,651.03 ("Aion Claims"):

            d.   Greenerways case:     Claim 34

            e.   Choice case:          Claim 3

            f.   Beacon case:          Claim 4

        b.      An action is pending in the District Court for the City and County of Denver, Colorado entitled *Aion Acquisition LLC v Beacon Organics, LLC; Greenerways, LLC; Choice Essential Oils, LLC; Jayme Bella; and Sharon J. Neiburg* (Case No. 2021CV33426) ("Colorado Action") whereby Aion is asserting, *inter alia*, a purported breach of the AFSA, the guaranties, and other loan agreements and fraudulent representation by the Defendants.  The Colorado Action is stayed as to the Debtors.

        c.      Trustee and Aion each filed an Opposition to Jayme Bella's Motion To Convert This Chapter 11 Case Pursuant To 11 U.S.C. § 706(b) which discussed the nature of Aion's lien and the transactions and events relating to such lien leading up to the Debtors' bankruptcy filing [ECF 67, 68, 77].

#39714692v1

d.    On April 13, 2023, Aion filed its *Motion of Aion Acquisition LLC to Prohibit Use or Other Disposition of Employee Retention Credit Funds Pursuant to 11 U.S.C. § 363(e)* [Docket No. 101] (the "Aion Motion"), seeking to limit the Trustee's ability to use the funds from the ERC pursuant to 11 U.S.C. § 363(e).  The Aion Motion asserted a secured interest not only against the ERC, but against any ERC that the Trustee may recover in the future, pursuant to that certain Amended Restated Financing and Security Agreement dated April 4, 2020.

e.    On June 15, 2023, the Court entered its *Order Granting the Trustee's Motion for Authority to Deposit Funds of the Debtor into the Estate's Trustee Account* [Docket No. 121], thereby authorizing the Trustee to deposit the funds from the ERC into the estate's trustee account and ordering that the funds be segregated and prohibited from use until further Court order.

f.    On July 6, 2023, the Court entered its *Order Setting Briefing Deadlines and Continuing Hearing on Motion of Aion to Prohibit Use or Other Disposition of Employee Retention Credit Funds Pursuant to 11 U.S.C. § 363(e)* which required supplemental briefing from the Parties on the extent of Aion's collateral particularly, on whether the ERC is a general intangible and whether Greenerways' interest in the ERC vested prepetition.  The issues have been fully briefed by both sides and the continued hearing on the 363(e) Motion is set for October 5, 2023.

g.    The claims bar date in these cases expired on July 1, 2022.

5.    On behalf of the Trustee, I was also personally involved in the negotiations resulting in the settlement with Aion.

6.    Subject to Bankruptcy Court approval, the Trustee and Aion have entered into that certain Settlement Agreement that resolves all of the parties' disputes relating to the ERC, Aion's secured claim, and the Estates' claims against Aion.

7.    The parties conducted the settlement negotiations at arm's length.    Counsel represented each party.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  September 14, 2023

/s/ Lovee D. Sarenas
LOVEE D. SARENAS

21

#39714692v1

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of September 13, 2023 (the "Execution Date"), by and between (i) Peter J. Mastan, as chapter 7 trustee (the "Trustee") for the bankruptcy estates of Beacon Organics, LLC ("Beacon"), Greenerways, LLC ("Greenerways"), and Choice Essential Oils, LLC ("Choice" and collectively with Beacon and Greenerways, the "Debtors"); and (ii) Aion Acquisition LLC, for itself and on behalf of and as successor in interest to P2Bi Holdings LLC ("Aion").  The Trustee and Aion are generally referred to in this Agreement together as the "Parties" and individually as a "Party."

## RECITALS

A.    On March 9, 2022, Beacon, Greenerways, and Choice each commenced a case under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").  Beacon's chapter 7 case is designated with Case No. 2:22-bk-11295-WB (the "Beacon Case"); Greenerways' chapter 7 case is designated with Case No. 2:22-bk-11298-WB (the "Greenerways Case"); and Choice's chapter 7 case is designated with Case No. 2-22-bk-11297-WB (the "Choice Case" and collectively with the Beacon Case and the Greenerways Case, the "Chapter 7 Cases").

B.    The Trustee is the duly-appointed chapter 7 trustee in each of the Chapter 7 Cases.

C.    On July 1, 2022, Aion timely filed a proof of claim in each Chapter 7 Case, each asserting secured claims arising from certain loans made to one or more of the Debtors (the "Loan") in the face amount of at least $9,081,651.03, designated as Claim No. 4-1 in the Beacon Case, Claim No. 34-1 in the Greenerways Case, and Claim No. 3-1 in the Choice Case (collectively, the "Aion Claims").

D.    On March 31, 2023, the Trustee filed his Motion for Authority to Deposit Funds of the Debtor into the Estate's Trustee Account in the Greenerways Case [Docket No. 98] (the "Motion to Deposit").  The Motion to Deposit requested, among other things, authority to deposit funds in the amount of $856,321.79, which the Trustee had received on account of an earned income tax credit claimed by Greenerways (the "ERC Payment").

E.    On April 13, 2023, Aion filed its Motion of Aion Acquisition LLC to Prohibit Use or Other Disposition of Employee Retention Credit Funds Pursuant to 11 U.S.C. § 363(e) in the Greenerways Case [Docket No. 101] (the "363(e) Motion").  The 363(e) Motion, among other things, asserts a security interest in the ERC Payment and asks the Bankruptcy Court to enter an order pursuant to 11 U.S.C. § 363(e) prohibiting the Trustee or any other party from using or otherwise disposing of the ERC Payment.  The Trustee disputes Aion's asserted security interest in the ERC Payment and filed an Opposition to the 363(e) Motion on May 3, 2023 [Docket No. 110].

F.    On June 15, 2023, pending resolution of the 363(e) Motion, the Bankruptcy Court entered an Order Granting the Motion to Deposit [Docket No. 121] (the "ERC Payment Order").  The ERC Payment Order authorized the Trustee to deposit the ERC Payment into a Trustee

account (the "Trustee Account") and ordered the Trustee to segregate the ERC Payment and not otherwise use or dispense with the ERC Payment until further order of the Bankruptcy Court. The full ERC Payment remains segregated in the Trustee Account.

G.    The Trustee disputes the Aion Claims in each Chapter 7 Case and believes he and each Debtor's bankruptcy estate (each an "Estate" and collectively, the "Estates") have claims against Aion in connection with the Loan, which Aion disputes.

H.    Aion and the Trustee have reached a settlement resolving all of their disputes and claims against the other, including disputes with respect to the ERC Payment, the 363(e) Motion, the Aion Claims, any and all liens asserted by Aion against all properties of the Debtors and the Estates, and the Trustee's claims against Aion.

NOW, THEREFORE, in consideration of the promises herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Aion and the Trustee hereby agree as follows:

## AGREEMENT

1.    Recitals.  The foregoing Recitals are incorporated herein by such reference and made a part of this Agreement.

2.    Treatment of the ERC Payment.  On the Effective Date (as defined below), Aion shall waive its lien and security interest with respect to 75% of the ERC Payment and shall retain a first-priority lien on and security interest in 25% of the ERC Payment, such that (a) the Trustee shall retain $642,241.34 of the ERC Payment for the estate in the Greenerways Case, unencumbered by any lien or security interest of Aion, and (b) Aion shall retain a first-priority lien on and security interest in $214,080.45 of the ERC Payment (the "Aion Portion of ERC Payment"). The Trustee shall pay Aion the Aion Portion of ERC Payment so as to be received by Aion on or before the date that is five (5) Business Days (as defined below) after the Effective Date.

3.    Reduction and Allowance of the Aion Claims.  On the Effective Date, each of the Aion Claims shall be limited, reduced, and allowed in each of the Chapter 7 Cases, on a joint and several basis, in the amount of $5,669,258.94 (the "Aion Allowed Claim"), as follows:

a.    Aion shall have an allowed secured claim in the Greenerways Case solely to the extent of the Aion Portion of ERC Payment.

b.    Aion shall have an allowed unsecured claim in each of the Chapter 7 Cases for all sums owed on account of the Aion Allowed Claim, less the Aion Portion of ERC Payment.

For avoidance of doubt, any payment of the Aion Allowed Claim, or any portion thereof, from any Estate, including, without limitation, payment of the Aion Portion of ERC Payment, shall be deemed to reduce the Aion Allowed Claim against all Estates on a dollar-for-dollar basis so that Aion shall be entitled to recover no more than the Aion Allowed Claim from the Estates in the aggregate.

2

EXHIBIT 1                                              PG. 24

4.      Resolution of the 363(e) Motion.  Upon the Effective Date (as described in this Agreement), the Parties' dispute with respect to the 363(e) Motion is deemed resolved.

5.      Release.

a.      Estates' Release.  Except for any claim in connection with the enforcement of this Agreement, on the Effective Date, the Trustee, on behalf of Beacon, Greenerways, Choice, and each of their respective bankruptcy estates, without further action, hereby forever and irrevocably discharges, remises, and releases Aion, P2Bi Holdings LLC ("Holdings"), and each of their respective present and former direct and indirect affiliates, subsidiaries, parents, divisions, predecessors, successors, assigns, employees, directors, managers, officers, shareholders, members, accountants, counsel, attorneys, consultants, brokers, representatives, and agents, and anyone associated with any of the foregoing or acting on any of their behalf, and all of them (collectively with Aion and Holdings, the "Aion Released Parties"), of and from all claims, rights, causes of actions, obligations, lawsuits, and/or liabilities of any kind, nature, or amount, whether in law or equity, whether known or unknown, anticipated or unanticipated, present or contingent, liquidated or unliquidated, concealed or hidden, suspected or unsuspected, including but not limited to compensatory damages, statutory damages, liquidated damages, exemplary damages, equitable relief, punitive damages, costs, expenses and attorneys' fees, arising out of or relating to any of the dealings, communications, or other acts or omissions involving one or more of the Aion Released Parties, between or among Beacon, Greenerways, Choice, the Trustee, any of the Estates, Aion, Holdings, and/or the Aion Released Parties, at any time heretofore through and including the Effective Date, including, without limitation, Aion's and Holdings' Loans to the Debtors, Aion's and Holdings' dealings with the Debtors before, during, and after events of default under the Loans, Aion's and Holdings' enforcement of the Loans and exercise of their respective rights and remedies thereunder, Aion's and Holdings' collection of, or attempt to collect, on account of the Loans, the acquisition of assets from Choice, the Chapter 7 Cases, the ERC Payment, and any other matters involving one or more of the Aion Released Parties between or among Beacon, Greenerways, Choice, the Trustee, any of the Estates, Aion, Holdings, and/or the Aion Released Parties.

b.      Aion and Holdings Releases.  Except for any claim in connection with the enforcement of this Agreement and the Aion Allowed Claim, on the Effective Date, Aion and Holdings, without further action, hereby forever, fully, and irrevocably discharge, remise, and release the Estates, the Trustee, and each of the Trustee's attorneys, accountants, other professionals, representatives, employees, agents, heirs, successors, predecessors, and assigns, past and present, and each of them (in each case, only to the extent that such persons were acting in that capacity) (collectively, the "Estates Released Parties"), of and from all claims, rights, demands, causes of actions, obligations, lawsuits, and/or liabilities of any kind, nature, or amount, whether in law or equity, whether known or unknown, anticipated or unanticipated, matured, unmatured, disputed, secured, unsecured, undisputed, legal, present or contingent, liquidated or unliquidated, concealed or hidden, suspected or unsuspected, including but not limited to compensatory damages, statutory damages, liquidated damages, exemplary damages, equitable relief, punitive damages, costs, expenses and attorneys' fees, which Aion, Holdings, or either of them own or hold or at any time heretofore have owned or held against the Estates Released Parties. Without limiting the foregoing, except as otherwise provided in this Agreement (including, without limitation, with respect to the Aion Allowed Claim and the Aion Portion of ERC Payment),

3

EXHIBIT 1                                              PG. 25

Aion and Holdings shall be deemed to have waived and released any claim and/or lien that Aion and/or Holdings have or had against any of (i) the Estates or the Debtors, (ii) the property of the Estates or the Debtors, and/or (iii) the ERC Payment.

       c.      This Agreement, including the releases set forth in Paragraphs 5.a and 5.b above, shall not be interpreted or construed as a release of, and shall not affect any of the Trustee's or Aion's rights or claims against any person or entity other than the Aion Released Parties and the Estates Released Parties, respectively.  Without limiting the generality of the foregoing, except for any Aion Released Party, the Trustee shall not be deemed to have released any claims or rights that the Trustee or the Estates may have against (a) any "insider" of the Debtors, within the meaning of 11 U.S.C. § 101(31); (b) any entity who has settled any claims with Aion and Holdings, whether in whole or in part, at any time, as to which settlement the Trustee is not a party; (c) any entity who has entered into a transaction with Aion or Holdings, whether in whole or in part; (d) any person or entity against whom the Trustee has commenced litigation; and (e) any person or entity who has filed a proof of claim against one or more of the Estates or that is identified as a creditor or equity holder of one or more of the Estates in the Debtors' Schedules of Assets and Liabilities filed in the Chapter 7 Cases.

       d.      Each Party represents and warrants that it has made such investigation of the facts pertaining to this Agreement and all matters pertaining thereto as it deems necessary. Each Party acknowledges that it may hereafter discover facts different from, or in addition to, those that it now knows or believes to be true with respect to these matters, and each Party agrees that this Agreement shall remain effective in all respects, including, without limitation, the releases contained herein, notwithstanding any different or additional facts or the discovery thereof.  Each Party agrees that if facts, claims, or circumstances are at any time later found, suspected, or claimed to be other than or different from the facts, claims, and circumstances now believed to be true, such Party expressly accepts and assumes the risk of such possible differences of facts, claims, and circumstances and agrees that the releases set forth herein shall be and remain effective notwithstanding any such difference in any fact, claim, or circumstance.  In addition, each Party acknowledges the risk and the possibility that other claims not known may develop or be discovered or consequences or results of claims may develop or be discovered in the future.  Each Party expressly acknowledges the risk that there may be claims released herein that it or he may not now know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known could affect their decision to enter into this Agreement.  Each Party nevertheless agrees that the releases set forth herein have been negotiated and agreed upon and each hereby expressly waives any and all rights that each may have under any federal or state statute or common law principle that may provide that a general release does not extend to claims that are not known to exist at the time of execution.  Without limiting the generality of the foregoing, each Party acknowledges that it or he is familiar with California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

4

EXHIBIT 1                                                    PG. 26

Each Party expressly waives and relinquishes any and all rights and benefits that it or he may have under, or which may be conferred on it or him by, the provisions of California Civil Code section 1542 as well as under any other state or federal statute or common law principle of similar effect, to the fullest extent that it or he may lawfully waive such rights or benefits pertaining to anything released under this Agreement.

e.      Subject to the occurrence of the Effective Date and to the maximum extent permitted by law, this Agreement may be pled (i) as a full and complete defense to, and used as a basis for an injunction against, any action, suit, or other proceeding brought with respect to any claim released herein; and (ii) in any action, suit, or other proceeding that may be instituted, prosecuted, or attempted that is contrary to or in breach of this Agreement.

6.      <u>Bankruptcy Court Approval and Effective Date</u>.

a.      No later than the date that is seven (7) Business Days after the Trustee receives a fully executed copy of this Agreement, the Trustee shall file a motion in each of the Chapter 7 Cases requesting approval of this Agreement and the settlement and compromise embodied in this Agreement pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Settlement Motion</u>").

b.      This Agreement shall be fully effective on the date (the "<u>Effective Date</u>") that the Bankruptcy Court enters an order in a form acceptable to the Trustee and Aion approving the Settlement Motion and settlement and compromise embodied in this Agreement and authorizing the Trustee to enter into the settlement on the terms and conditions of this Agreement (the "<u>Approval Order</u>").  Except as provided herein, no Party shall have any rights, duties, or obligations under this Agreement until the Effective Date.  The Parties shall cooperate and take all reasonable and appropriate actions to seek and obtain entry of the Approval Order and will not take any action to file any pleading that would or might delay or interfere in any way with the Trustee's efforts to obtain entry of the Approval Order, or counsel, encourage, or assist any other person or entity to do so; *provided* that in the event that any person or entity appeals or otherwise seeks subsequent review of the Approval Order, the Trustee may, in his sole discretion, oppose or not oppose, prosecute or not prosecute, or otherwise respond or not respond to such appeal or request for subsequent review.

c.      In the event that the Bankruptcy Court enters an order denying approval of the Settlement Motion, (i) the rights, obligations, and releases herein are null and void and of no force or effect; (ii) the Trustee shall have no obligation to appeal such denial; and (iii) the Parties' rights, remedies, and defenses shall be as they were before they signed this Agreement, and nothing in this Agreement shall prohibit, impair, or otherwise impede any Party from asserting its or his rights, remedies, and defenses, including, without limitation, with respect to the ERC Payment, the Aion Claims, and any claims any of the Estates may have with respect to the Loan.

7.      <u>Attorneys' Fees and Costs</u>.  Each Party shall bear his or its own attorneys' fees, expenses, and costs incurred in connection with the subjects of this Agreement and the preparation of this Agreement.  Nothing in this Agreement shall be interpreted or construed to waive or release any right of the Trustee and/or his professionals to seek compensation and reimbursement from the Estates.

5

EXHIBIT 1                    PG. 27

8.      <u>Representations and Warranties</u>.  Each Party hereby represents and warrants to each other Party as of the Execution Date, subject to entry of the Approval Order in the case of the Trustee, as follows:

a.      It or he has all requisite organizational power, authority, and legal capacity to execute, deliver, and perform this Agreement.  This Agreement has been duly and validly executed and delivered by it or him and is the valid and binding obligation of it or him, enforceable against it or him in accordance with its terms.  Each of the undersigned individually represents and warrants that he or she is authorized to execute this Agreement and to bind the Party for whom he or she is signing.  For avoidance of doubt, the Trustee's obligations under this Agreement are subject to Bankruptcy Court approval as set forth elsewhere in this Agreement.

b.      The execution, delivery, and performance by it or him of this Agreement and any other documents and agreements contemplated hereby do not and will not:  (i) violate any provision of any applicable laws; (ii) violate or constitute a breach or default under any agreement to which it or he is a party or by which its or his properties or assets are bound; or (iii) except as expressly provided for herein, require any consent, approval, or authorization of, or filing of any certificate, notice, application, report or other document with, any governmental authority or other person or entity.

c.      Except with respect to assignment between Aion and Holdings, it or he (whether on its or his own behalf or on behalf of another) is the current holder of and real party in interest with respect to the claims, actions, causes of actions, rights, remedies, obligations, or defenses subject to this Agreement and has not assigned, transferred, or sold, or entered into any agreement or understanding to assign, transfer, or sell, any claim, action, cause of action, right, remedy, obligation, or defense, in whole or in part, that it or he may have against the other Party.  Before, on, or after the Effective Date, no Party (whether on its or his own behalf or on behalf of another) shall assign, transfer, or sell, or enter into any agreement or understanding to assign, transfer, or sell, any claim, action, cause of action, right, remedy, obligation, or defense, in whole or in part, that it or he may have against the other Party.

d.      It or he has not been induced into signing this Agreement through any statement, representation, promise, disclosure, nondisclosure, consideration, or any other inducement by any other Party, any agent of a Party, or any third party, except for the promises, representations, and consideration expressly set forth in this Agreement.

9.      <u>Further Assurances and Subsequent Agreements</u>.  Upon the reasonable request of any Party, each Party shall execute, acknowledge, and deliver any additional instruments or documents, or take such additional acts, that may reasonably be required to carry out the intentions of this Agreement.  Without limiting the generality of the foregoing, the Parties agree to cooperate to dismiss the Debtors from the litigation currently pending in the District Court for the City and County of Denver, Colorado, Case No. 2021CV33426, consistent with the terms of this Agreement; *provided* that such dismissal shall not waive, release, or limit Aion's rights and remedies with respect to any person or entity other than the Debtors, the Estates, or the Trustee.

10.     <u>No Admissions of Liability</u>.  The Parties agree that nothing contained herein, and no discussions or action taken by any Party in connection with this Agreement or the negotiations

6

EXHIBIT 1                                              PG. 28

leading to this Agreement, shall be construed as an admission by any Party of liability or the amount of any claim for any purpose whatsoever.

11.    <u>Integration</u>.  This Agreement constitutes the complete and final expression of the entire and only understanding between the Parties relating to the subject matter of this Agreement, including, without limitation, any and all obligations and commitments of the Trustee and Aion under this Agreement, and supersedes any prior written and oral representations, negotiations, and/or agreements between the Parties.

12.    <u>Independent Advice of Counsel</u>.  In executing this Agreement, the Parties have had the opportunity to consult with legal counsel of their choice concerning this Agreement, including the meaning of the terms thereof, and agree to be bound to those terms.  The Parties have relied solely on their own judgment, belief, and knowledge, and to the extent they feel it is necessary, have sought the advice and recommendations of their own independently selected counsel concerning the nature, existence, extent, and duration of their rights and claims relating thereto, the rights affected by this Agreement, the form and content of this Agreement, and the advisability of entering into and executing this Agreement.  The advice of legal counsel has been obtained by all Parties to this Agreement prior to its execution by each Party.  No Party has been unduly influenced to any extent whatsoever by any other Party. The Parties have read this Agreement carefully and thoroughly in its entirety.  The contents of his Agreement are known and understood by the Parties, and this Agreement is voluntarily signed with full knowledge of the consequences and implications of their obligations contained herein.

13.    <u>Amendment; Waiver</u>.    This Agreement may not be amended, altered, supplemented, or modified except by a writing signed by all of the Parties to this Agreement.  No term or condition of this Agreement shall be deemed to have been waived nor shall there be an estoppel against the enforcement of any provision of this Agreement, except by written instrument executed by the Party charged with such waiver or estoppel.  No such written waiver shall be deemed a continuing waiver unless specifically stated therein and such waiver shall operate only as to the specific term or condition waived and not for the future or as to any act other than that specifically waived.

14.    <u>Materiality</u>.    The statements, representations, and acknowledgments in this Agreement are not mere recitations; rather, they are understood and relied upon as part of this Agreement by the Parties and are material hereto.

15.    <u>Construction</u>.  This Agreement is the product of negotiation and preparation by and between the Parties and their respective attorneys.  The Parties, therefore, expressly acknowledge and agree that this Agreement shall not be deemed prepared or drafted by one Party or another, or its attorneys, and will be construed accordingly.  Any prior drafts of this Agreement shall not be used to determine the intent of the Parties to this Agreement.

16.    <u>Choice of Law; Consent to Jurisdiction</u>.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California without regard to choice of law and conflict of law principles.  The Parties agree that the Bankruptcy Court shall have and retain jurisdiction over any dispute regarding the performance, breach, scope, or enforcement of this Agreement and all Parties expressly consent to such jurisdiction and entry of a final order by the

Bankruptcy Court.  In the event that the Bankruptcy Court lacks or does not exercise jurisdiction over any such dispute, and to the extent not inconsistent with applicable law, each Party consents to the personal jurisdiction and venue of the United States District Court for the Central District of California, Los Angeles, for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Agreement.  In the event that the Bankruptcy Court and the District Court lack or do not exercise jurisdiction over any such dispute, each Party consents to the personal jurisdiction and venue of the Superior Court of the State of California for the County of Los Angeles, for the trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Agreement.

17.    <u>Waiver of a Jury Trial</u>.  To the extent permitted by applicable law, each Party hereby expressly waives the right to trial by jury in any action or other proceeding arising out of, relating to, this Agreement or the Parties' rights and obligations with respect thereto.

18.    <u>Successors and Assigns</u>.  This entire Agreement, including, for avoidance of doubt and without limitation, the releases contained in this Agreement, shall be binding on and inure to the benefit of each of the Parties, the Aion Released Parties, the Estates Released Parties, and their respective successors, assigns, agents, and representatives, including without limitation, any other trustee or successor trustee appointed or elected for any of the estates of any of the Debtors in the Chapter 7 Cases or in any successor or subsequent case, any receiver or custodian appointed over the Debtors and/or their assets, and the Debtors themselves and shall survive dismissal or closure of one or more of the Chapter 7 Cases.

19.    <u>Time</u>.  Time is of the essence in performing any of the obligations under this Agreement.  Time shall be computed under this Agreement pursuant to Rule 9006(a) of the Federal Rules of Bankruptcy Procedure, and "<u>Business Day</u>" under this Agreement shall be any day that is not a Saturday, Sunday, or legal holiday under Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

20.    <u>Severability</u>.  If, after the Effective Date, any provision of this Agreement is adjudged by a court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain enforceable and in full force and effect.

21.    <u>Notice</u>.  Any notice, service, or demand under this Agreement may be given by (a) Federal Express, (b) hand delivery, or (c) email (provided that any notice by email is accompanied by notice by Federal Express or hand delivery), and by no other means as follows:

> To the Trustee:        Peter J. Mastan, Trustee
> c/o Dinsmore & Shohl, LLP
> 550 South Hope Street, Suite 1765
> Los Angeles, California  90071
> peter.mastan@dinsmore.com

8

EXHIBIT 1                                          PG. 30

| with a copy to: | Lovee D. Sarenas |
| | Dinsmore & Shohl LLP |
| | 550 S. Hope Street, Suite 1765 |
| | Los Angeles, California  90071 |
| | attn:  lovee.sarenas@dinsmore.com |
| | |
| To Aion: | James Shehigian, Senior Vice President |
| | 8200 S. Quebec St., Suite A3302 |
| | Centennial, Colorado  80122 |
| | jshehigian@aionfi.com |
| | |
| with a copy to: | Davis Graham & Stubbs LLP |
| | 1550 17th Street, Suite 500 |
| | Denver, Colorado  80202 |
| | attn:  Adam L. Hirsch (adam.hirsch@dgslw.com) |
| | Kyler K. Burgi (kyler.burgi@dgslaw.com) |

For purposes of notice given, the refusal to accept a notice attempted to be delivered by Federal Express at that Party's address set forth above shall be deemed to have been delivered to that Party at the time of such attempted delivery.

22.    <u>Headings</u>.  The headings of sections or paragraphs herein are intended solely for the convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

23.    <u>Counterparts</u>.  This Agreement may be executed in electronic counterparts, and copies of the fully-assembled signature pages shall have the same force and effect as an original signature.

[Remainder of Page Intentionally Blank; Signature Page Follows]

9

EXHIBIT 1                                                                  PG. 31

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Execution Date.

**PETER J MASTAN,** as chapter 7 trustee for the estates of Beacon Organics, LLC; Greenerways, LLC; and Choice Essential Oils, LLC

By: _____
Name: Peter J. Mastan
Title:  Chapter 7 Trustee

**AION ACQUISITION LLC,** for itself and on behalf of and as successor in interest to P2Bi Holdings LLC

By: _____
Name: James Shehigian
Title: Senior Vice President

10

EXHIBIT 1                                                    PG. 32

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Execution Date.

**PETER J MASTAN,** as chapter 7 trustee for the estates of Beacon Organics, LLC; Greenerways, LLC; and Choice Essential Oils, LLC

By: _____
Name: Peter J. Mastan
Title:  Chapter 7 Trustee

**AION ACQUISITION LLC,** for itself and on behalf of and as successor in interest to P2Bi Holdings LLC

By: _____
Name: James Shehigian
Title: Senior Vice President

10

EXHIBIT 1                    PG. 33

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is:                    550 S. Hope Street, Suite 1765
                               Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): ***MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND AION
ACQUISITION LLC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN
SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner
required by LB. 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to
controlling General Orders and LB., the foregoing document will be served by the court via NEF and
hyperlink to the document. On **September 14, 2023, I** checked the CM/ECF docket for this bankruptcy
case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice
List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **September 14, 2023**, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope
in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the
document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LB., on (*date*)
**September 14, 2023**, I served the following persons and/or entities by personal delivery, overnight mail
service, or (for those who consented in writing to such service method), by facsimile transmission and/or
email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight
mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

| 9/14/2023 | Katrice Ortiz | /s/ Katrice Ortiz |
|-----------|---------------|-------------------|
| *Date* | *Printed Name* | *Signature* |

1

**In re Beacon Organics LLC**
**U.SB.C. – Los Angeles Division**
2
**Case No. 2:22-bk-11295-WB**

3      SERVED VIA NOTICE OF ELECTRONIC FILING (NEF):

4
- **Jerrold L Bregman:** jbregman@bg.law, ecf@bg.law *[Counsel to Aion Acquisition*
5          *LLC]*
- **Kyler K Burgi:** kyler.burgi@dgslaw.com **[Counsel to Aion Acquisition LLC]**
6      - **Christopher Celentino:** christopher.celentino@dinsmore.com,
           caron.burke@dinsmore.com *[Counsel to Ch. 7 Trustee]*
7      - **Adam L Hirsch:** adam.hirsch@dgslaw.com, robin.anderson@dgslaw.com *[Counsel to*
           *Aion Acquisition LLC]*
8
- **Garrick A Hollander:** ghollander@wghlawyers.com, jmartinez@wghlawyers.com;
9          svillegas@wghlawyers.com *[Counsel to Winthrop Golubow Hollander, LLP]*
- **Peter J Mastan (TR):** pmastan@iq7technology.com; travis.terry@dinsmore.com;
10          ecf.alert+Mastan@titlexi.com *[Ch. 7 Trustee]*
- **Hamid R Rafatjoo:** hrafatjoo@raineslaw.com, bclark@raineslaw.com *[Counsel to*
11          *Debtor]*
- **Lovee D Sarenas:** lovee.sarenas@dinsmore.com, katrice.ortiz@dinsmore.com *[Counsel*
12          *to Ch. 7 Trustee]*
- **William A Smelko:** William.Smelko@procopio.com,
13          kristina.terlaga@procopio.com;calendaring@procopio.com *[Counsel to Michael T.*
14          *Ashley and Jayme Neiberg]*
- **United States Trustee (LA):** ustpregion16.la.ecf@usdoj.gov
15      - **Kimberly Walsh:** bk-kwalsh@texasattorneygeneral.gov, sherri.simpson@oag.texas.gov
           *[Creditor Texas Comptroller of Public Accounts, Revenue Accounting Division]*
16      - **Gregg Zucker:** gregg@foundationlaw.com *[Counsel to the Merchant of Tennis, Inc.]*

17

18      **SERVED VIA REGULAR U.S. MAIL:**

19          **DEBTOR**

20          Beacon Organics, LLC
           2850 East Pico Blvd.
21          Los Angeles, CA  90023

22          **SECURED CREDITORS**

23          AION Acquisition LLC                        P2BInvestor Inc.
           Attn: Cyd D. Petre                            1120 Lincoln Street, #100
           75 East Santa Clara St., Suite 900            Denver, CO 80203-2116
24          San Jose, CA 95113-1842

25          P2BI Holdings, LLC
           20 Burlington Mall Road, Suite 420
26          Burlington, MA 01803-4129

27

28

**CREDITORS AND/OR INTERESTED PARTIES**

Adam L. Hirsch
1550 17th Street, Suite 500
Denver, CO 80202-1500

Kyler K. Burgi
1550 17th Street, Suite 500
Denver, CO 80202-1500

III.     **SERVED BY OVERNIGHT DELIVERY (FED EX):**

**United States Bankruptcy Court**

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

#39714692v1